**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MILTON LEON SIMPSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:10-cv-02950-JPM-tmp |
| BREDESEN ET AL., | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment filed by Defendants Correct Care Solutions, LLC; Naomi Swift, M.D.; Diane Simpkins, RN; Michelle Bishop, RN; and Elby Mattix, LPN ("Defendants"), on January 15, 2015. (ECF No. 188.) For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.

**I.    BACKGROUND**

This is a pro se action for violation of civil rights under 42 U.S.C. § 1983.

Plaintiff Milton Leon Simpson ("Plaintiff") filed a ninety-four-page Complaint against thirty-four defendants on December 29, 2010. (ECF No. 1.) Simpson, then an inmate at the Shelby County Jail ("Jail"), alleged a variety of violations of his civil rights under 42 U.S.C. § 1983. (See id.) On March 25, 2011, Simpson filed an Amended Complaint. (ECF No. 13.)

On June 22, 2011, the Court dismissed the claims against fourteen defendants and ordered the Clerk to issue process for the remaining twenty defendants. (ECF No. 20 at 26-27; see also ECF No. 21.)

On August 25, 2011, Defendant Correct Care Solutions, LLC ("CCS") filed a Motion to Dismiss. (ECF No. 47.) Plaintiff filed a Response on January 11, 2012. (ECF No. 80.) The Court denied the Motion on March 30, 2012. (ECF No. 93.)

On August 30, 2011, Defendants Stephanie Adair, Michelle Bishop, Ronnie Haywood, Elby Mattix, Mary Montgomery, Diane Simpkins, Naomi Swift, M.D., and Gwendolyn Watson filed a Motion to Dismiss. (ECF No. 48.) Plaintiff filed a Response on January 12, 2012. (ECF No. 77.) On March 30, 2012, the Court granted in part and denied in part the Motion to Dismiss by these Defendants (ECF No. 48). (ECF No. 93.) Specifically, the Court denied the Motion to Dismiss as to all claims against Defendant Michelle Bishop, granted the Motion to Dismiss as to all claims against Defendants Stephanie Adair, Ronnie Haywood, Mary Montgomery, and Gwendolyn Watson, and granted in part and denied in part the Motion to Dismiss as to claims against Defendants Elby Mattix, Diane Simpkins, and Naomi Swift, M.D. (Id.)

On September 16, 2011, Defendant Shelby County Health Care Corporation filed a Motion to Dismiss. (ECF No. 58.) Plaintiff

2

filed a Response on January 11, 2012. (ECF No. 78.) On September 18, 2012, the Court granted Shelby County Health Care Corporation's Motion to Dismiss. (ECF No. 109.)

On September 16, 2011, Defendants Shelby County, Jail Director Robert Moore, Counselor Roy Rodgers, Deputy Jailer Visor, and Lt. Kornegay filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 59.) Plaintiff filed his Response on January 11, 2012. (ECF No. 79.) The relevant Defendants filed a Reply on January 31, 2012. (ECF No. 81.) On September 27, 2012, the Court granted this Motion for Summary Judgment. (ECF No. 112.)

On November 4, 2011, without leave of Court, Simpson filed a Second Amended Complaint. (ECF No. 65.) On November 17, 2011, all then-remaining Defendants filed a Joint Motion to Dismiss. (ECF No. 67.) Plaintiff responded on November 29, 2011. (ECF No. 69.) On January 30, 2012, Plaintiff filed a Motion to Supplement and Join Parties. (ECF No. 82.) On September 25, 2012, the Court granted Defendants' Joint Motion to Dismiss the Second Amended Complaint (ECF No. 67), and denied without prejudice Plaintiff's motions to amend and supplement his Complaint (ECF Nos. 68, 74, 82). (ECF No. 110.)

On November 13, 2012, Plaintiff again moved to supplement his Complaint. (ECF No. 117.) On September 20, 2013, the Court partially granted the Motion, permitting Plaintiff to add claims

3

against Officer T. Bell, Officer Burton, and Nurse Green.  (ECF
No. 131.)  Plaintiff filed a supplemental Complaint on November
13, 2012.  (ECF No. 132.)  Defendants CCS, Bishop, Mattix,
Simpkins, and Swift filed an Answer to the original and
supplemental complaints on October 29, 2013.  (ECF No. 142.)

On October 25, 2013, Green filed a Motion to Dismiss.  (ECF
No. 139.)  Bell filed a Motion to Dismiss/for Summary Judgment
on November 13, 2013.  (ECF No. 151.)  Burton filed a Motion to
Dismiss on December 5, 2013.  (ECF No. 161.)  On December 20,
2013, Plaintiff filed a Response to all three motions.  (ECF No.
164.)  Green filed a reply brief on January 3, 2014.  (ECF No.
165.)  Also on January 3, 2014, Bell and Burton filed a joint
reply brief.  (ECF No. 167.)  The Court granted all three
motions to dismiss on September 8, 2014.  (ECF No. 181.)

Boone and Crider filed respective motions to dismiss on
January 10, 2014.  (ECF Nos. 168, 169.)  Plaintiff responded on
January 23, 2014.  (ECF Nos. 171, 170.)  Boone and Crider filed
respective replies on February 4, 2014.  (ECF Nos. 172, 173.)
The Court granted both motions to dismiss on September 8, 2014.
(ECF No. 181.)

Following the Court's September 8, 2014 Order, the
remaining Defendants in this matter are CCS, Swift, Simpkins,
Bishop, and Mattix ("the remaining Defendants").  (ECF No. 181.)
On January 15, 2015, the remaining Defendants jointly filed a

Motion for Summary Judgment.  (ECF No. 188.)  Plaintiff filed a
Response in Opposition on May 4, 2015.  (ECF No. 208.) On May
18, 2015, Defendants filed a reply brief.  (ECF No. 210.)
Plaintiff filed a sur-reply on June 4, 2015. (ECF No. 213.)
Defendants subsequently filed an Objection to Unauthorized Sur-
Reply Filed by Plaintiff on June 5, 2015.  (ECF No. 214.)

## II.  SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a); accord Haddad v. Alexander, Zelmanski, Danner &
Fioritto, PLLC, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam).
"A fact is 'material' for purposes of summary judgment if proof
of that fact would establish or refute an essential element of
the cause of action or defense."  Bruederle v. Louisville Metro
Gov't, 687 F.3d 771, 776 (6th Cir. 2012).  "A genuine dispute of
material facts exists if 'there is sufficient evidence favoring
the nonmoving party for a jury to return a verdict for that
party.'"  Am. Copper & Brass, Inc. v. Lake City Indus. Prods.,
Inc., 757 F.3d 540, 543-44 (6th Cir. 2014) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"The moving party bears the initial burden of demonstrating
the absence of any genuine issue of material fact."  Mosholder
v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex

5

Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); see also Phelps v. State Farm Mut. Auto. Ins. Co., 736 F.3d 697, 702 (6th Cir. 2012).  "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Phelps, 736 F.3d at 703 (quoting Anderson, 477 U.S. at 251-52).  "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor."  Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 251).

   "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  Mosholder, 679 F.3d at 448-49 (citing Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e)).  "'When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to

judgment as a matter of law and summary judgment is proper.'"

Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d
911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670
F.3d 677, 680 (6th Cir. 2012) (en banc)); see also Kalich v. AT
& T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

> To show that a fact is, or is not, genuinely disputed,
> both parties are required to either "cite[] to
> particular parts of materials in the record" or
> "show[] that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an
> adverse party cannot produce admissible evidence to
> support the fact."

Bruederle, 687 F.3d at 776 (alterations in original) (quoting
Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448
("To support its motion, the moving party may show 'that there
is an absence of evidence to support the nonmoving party's
case.'") (quoting Celotex, 477 U.S. at 325). "'Credibility
determinations, the weighing of the evidence, and the drawing of
legitimate inferences from the facts are jury functions, not
those of a judge[.]'" Martinez, 703 F.3d at 914 (alteration in
original) (quoting Anderson, 477 U.S. at 255) (internal
quotation marks omitted).

"The court need consider only the cited materials, but it
may consider other materials in the record." Fed. R. Civ.
P. 56(c)(3); see also Tucker v. Tennessee, 539 F.3d 526, 531
(6th Cir. 2008) (the court has no "duty to search the entire
record to establish that it is bereft of a genuine issue of

material fact"); <u>Emerson v. Novartis Pharm. Corp.</u>, 446 F. App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." (alteration in original) (quoting <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991))).

"A party opposing a motion for summary judgment must file a response within 28 days after the motion is served or a responsive pleading is due, whichever is later."  LR 56.1(b). Further, "[f]ailure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment."  LR 56.1(d).  Objections to evidentiary materials offered in opposition to a motion for summary judgment "shall identify the Rule of Evidence or other authority that establishes inadmissibility of the proffered evidence."  LR 56.1(e).  Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex</u>, 477 U.S. at 332.

## III. ANALYSIS

The Court first addresses the threshold issues of timely filing and the admissibility of Plaintiff's affidavits. Second,

the Court addresses Plaintiff's allegations that Defendants have violated his rights under the Health Insurance Portability and Accountability Act (HIPAA).  Third, the Court addresses Plaintiff's remaining § 1983 claims against Defendants.

### A. Timeliness of Plaintiff's Response, Accompanying Affidavits, and Sur-Reply

Defendants argue that Plaintiff's Response, accompanying affidavits, and sur-reply should not be considered because Plaintiff filed his Response and accompanying affidavits after the Court's deadline and because these documents do not comply with Federal Rules of Civil Procedure Rule 56(c)(4) or Local Rule 56.1(d).  (Reply at 5-6, ECF No. 210; Objection to Unauthorized Sur-Reply at 2, ECF No. 214.)

When a nonmoving party fails to respond to a summary judgment motion in the time frame set by the local rules, district courts in the Sixth Circuit have largely "consider[ed] the [moving party's] statement of material facts to be undisputed for purposes of the instant motion of summary judgment."  Panzica v. Corr. Corp. of Am., No. 12-1026, 2013 WL 3354517, at *2 (W.D. Tenn. July 3, 2013), rev'd on other grounds, 559 F. App'x 461 (6th Cir. 2014); see also Featherston v. Charms Co., No. 04-2157M1/P, 2005 WL 1364621, at *1 n.1 (W.D. Tenn. May 10, 2005); Quality Recycling Servs. v. Page Int'l, Inc., No. 11-2694, 2012 WL 2577514, at *1 (W.D. Tenn. July 3,

2012); <u>Hawkins v. Memphis Light Gas & Water</u>, No. 09-2024-Ma, 2011 WL 6012503, at *1 n.1 (W.D. Tenn. Dec. 1, 2011).

Rule 6(b) of the Federal Rules of Civil Procedure governs the extension of filing deadlines. Under Rule 6(b), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect." In his sur-reply, Plaintiff asserts his efforts to file his Response on time and explains why he was unable to do so. (ECF No. 213 at 1-2.) The Court construes this as a motion for extension of time to file a response. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v.</u> <u>Gamble</u>, 429 U.S. 97, 106 (1976)) ("A document filed <u>pro se</u> is 'to be liberally construed' . . . ."). To determine whether Plaintiff's delay was the result of excusable neglect, courts consider five factors:

> (1) the danger of prejudice to the non[filing] party,
> (2) the length of the delay and its potential impact
> on judicial proceedings, (3) the reason for the delay,
> (4) whether the delay was within the reasonable
> control of the [filing] party, and (5) whether the
> late-filing party acted in good faith.

<u>Nafziger v. McDermott Int'l, Inc.</u>, 467 F.3d 514, 522 (6th Cir. 2006) (citing <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.</u> <u>P'ship</u>, 507 U.S. 380, 395 (1993)).

In light of these factors, the Court finds that Plaintiff's late filing of his Response and accompanying affidavits was due to excusable neglect. On February 25, 2015, the Court granted Plaintiff leave to respond to Defendants' Motion for Summary Judgment by May 1, 2015. (ECF No. 204 at 3.) Plaintiff placed his Response and the unsigned and nonnotarized versions of the affidavits in the mail on April 29, 2015, two days before the filing deadline. (See ECF No. 208-4.) These documents were ultimately filed on May 4, 2015, only three days after the filing deadline had passed. (See ECF No. 208-1.) Although Plaintiff's notarized affidavits were not filed until May 11, 2015 (see ECF No. 209), this minor delay caused no prejudice to Defendants. Additionally, Plaintiff adequately explains the reason for the delay and demonstrates that it was outside of his reasonable control. Plaintiff asserts that he could not get the affidavits notarized by his counselor until his counselor received approval from his supervisor. (ECF No. 213 at 1-2.) The notarization was "approved and completed on 05-05-2015," and the Court received these documents soon after. (Id.; see ECF No. 209.) The Court recognizes that Plaintiff diligently attempted to get his Response and accompanying affidavits to this Court on time. As a result, the Court finds excusable neglect for the delay in filing and addresses on the merits the allegations in Plaintiff's Response and accompanying affidavits.

Defendants additionally argue that Plaintiff's sur-reply should not be considered because it was not filed with leave of Court. (ECF No. 216.) On June 11, 2015, Plaintiff filed a Motion pursuant to Fed. R. Civ. P. 6(b)(1)(B), in which he requested that the Court accept his sur-reply. (ECF No. 215.) "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances . . . ." Key v. Shelby Cnty., 551 F. App'x 262, 265 (6th Cir. 2014). Simpson is a pro se plaintiff who "thought he was completely complying with these requirements." (ECF No. 213 at 5.) While Defendants' arguments are well-taken, in light of the less stringent standard to which the Court holds an individual who proceeds pro se, the Court will consider the arguments raised in Plaintiff's sur-reply. See Wilson v. United States, 3:09-CV-42, 2010 WL 1257866, at *1 n.2 (E.D. Tenn. Mar. 25, 2010). Additionally, the Court finds that a response to Plaintiff's sur-reply is unnecessary to resolve the instant issues presented on summary judgment and declines to grant leave to Defendants to file an additional reply.

**B. Plaintiff's Affidavits**

In support of his Reply to Defendant's Motion for Summary Judgment, Plaintiff submits six affidavits. (ECF No. 208-1.) The first affidavit is Plaintiff's own declaration. (Id. at 1-

3.)  The other five affidavits are identical in all respects,
except for the name and signature of the individual affiants.
(ECF No. 209 at 3-6.)  Defendants argue that these affidavits
should be disregarded because they "contain inadmissible
assertions and opinions."  (ECF No. 210 at 5.)  Specifically,
Defendants argue that the affidavits submitted by Plaintiff
should not be considered on summary judgment because they
contain irrelevant information, are not based on personal
knowledge of the affiant, include improper opinion testimony,
and contain merely conclusory allegations.  (Id. at 6-9.)

    "Under Rule 56, a party must support factual assertions
with admissible evidence."  Johnson v. Muskingum Cnty. Sheriff's
Dep't, No. 2:13-cv-0025, 2014 WL 1909511, at *7 (S.D. Ohio May
13, 2014) adopted by No. 2:13-cv-25, 2014 WL 4659644 (S.D. Ohio
Sept. 17, 2014).  A plaintiff's pro se status does not relieve
him of this obligation. See Viergutz v. Lucent Techs., Inc., 375
F. App'x 482, 484-85 (6th Cir. 2010).

    At the summary judgment stage, a party may support or
oppose a motion with an affidavit or declaration, but the
Federal Rules of Civil Procedure explain that "[a]n affidavit or
declaration . . . must be made on personal knowledge, set out
facts that would be admissible in evidence, and show that the
affiant or declarant is competent to testify on the matters
stated."  Fed. R. Civ. P. 56(c)(4).  Additionally, the Court may

evaluate only evidence that is relevant.  <u>See</u> Fed. R. Evid. 401
& 402.  "Evidence is relevant if (a) it has any tendency to make
a fact more or less probable than it would be without the
evidence; and (b) the fact is of consequence in determining the
action."  Fed. R. Evid. 401.  Moreover, under Rule 403,
"evidence which is vague and speculative" is inadmissible.
<u>United States v. Maestas</u>, 554 F.2d 834, 836 n.2 (8th Cir. 1977).

"Rule 56(e) provides that judgment 'shall be entered'
against the nonmoving party unless affidavits or other evidence
'set forth specific facts showing that there is no genuine issue
for trial.'"  <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888
(1990) (quoting Fed. R. Civ. P. 56(e)).  With respect to lay
opinion testimony found in the affidavit, the Sixth Circuit
"'favors the admission of opinion testimony, provided that it is
well founded on personal knowledge and susceptible to specific
cross-examination.'"  <u>Harris v. J.B. Robinson Jewelers</u>, 627 F.3d
235, 240 (6th Cir. 2010) (quoting <u>United States v. Valdez-Reyes</u>,
165 F. App'x 387, 392 (6th Cir. 2006)) (internal quotation marks
and citation omitted).  On the other hand, "[t]he object of
[Rule 56(e)] is not to replace conclusory allegations of the
complaint or answer with conclusory allegations of an
affidavit."  <u>Lujan</u>, 497 U.S. at 888.  "When . . . conclusions of
law appear in an affidavit . . . the extraneous material should
be disregarded, and only the facts considered."  <u>F.R.C. Int'l,</u>

<u>Inc. v. United States</u>, 278 F.3d 641, 643 (6th Cir. 2002)

(citation and internal quotation marks omitted).  A nonmovant

"must set forth through competent and material evidence specific

facts showing that there is a genuine issue for trial."  <u>Miller</u>

<u>v. Lorain Cnty. Bd. of Elections</u>, 141 F.3d 252, 256 (6th Cir.

1998).

### 1. **Plaintiff's Affidavit**

In his affidavit, Plaintiff alleges that Defendants

violated HIPAA by providing certain information in the

affidavits attached to their Motion for Summary Judgment.  (ECF

No. 208-1 at 2-3.)  These allegations have no bearing on the

instant motion and will not be considered in evaluating this

motion, <u>see</u> <u>infra</u> Part III.C.  Additionally, Plaintiff's general

allegations that CCS employees are "[u]ntrained, [u]nsupervised,

and [u]ndisciplined," (ECF No. 208-1 at 1), and "that CCS has a

[p]olicy of using less than efficacious medications and

treatments" (ECF No. 208-1 at 2), are both conclusory and

improper lay opinion testimony.  <u>See</u> Fed. R. Evid. 701.

Plaintiff is not an expert witness qualified to opine on the

adequacy of the training of CCS's medical staff.  <u>See</u> <u>Daubert v.</u>

<u>Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 592 (1993).  Moreover,

Plaintiff's statement that "Simpkins['] delay in accessing

plaintiff was for the sole purpose of causing plaintiff to

suffer because plaintiff had a disagreement with Simpkins" (ECF

No. 208-1 at 3), is a conclusory allegation and will not be
considered. See Lujan, 497 U.S. at 888. Plaintiff presents no
evidence to support this contention; he merely replaces the
conclusory allegation in his complaint with a conclusory
allegation in his affidavit. See id. Plaintiff's statement
that he "remained in [s]evere [p]ain and [s]uffering for 17
months until [his] partial corrective surgery" is irrelevant to
the issues of whether any of the remaining Defendants acted with
deliberate indifference on the particular dates in question, and
is therefore inadmissible. (See ECF No. 208-1 at 1); see also
Fed. R. Evid. 401. Finally, Plaintiff's statement that
"Defendant Boone was fully aware of Plaintiffs' [sic] allergy
to" Tylenol 3 is not relevant to Defendant Swift's awareness of
Plaintiff's allergy. (See ECF No. 208-1 at 2). The action
against Boone has been dismissed, and this allegation is not
relevant to any remaining claims. Accordingly, the Court does
not consider these allegations in its analysis. Plaintiff's
remaining allegations in his affidavit are, however, admissible,
and the Court considers them herein.

### 2. Five Other Identical Affidavits

The five identical affidavits submitted by Plaintiff do not
contain any specific dates or allegations against specific
Defendants. Specifically, each affidavit states:

> I swear under oath that I am and or have been an
> inmate at Shelby County Justus [sic] Center (jail),
> and have been treated by the on[-]site medical staff
> employed through Corrective [sic] Care solutions.
> During my detention I have had to suffer unjustly at
> the hands of an uncaring, under trained, unsupervised,
> and cruel medical staff. From the nurse that brings
> medicine either to[o] late in the morning [or] too
> early at night that refuses to answer the simplest of
> serious request[s] or concerns. Along with Doctors
> that either, take to[o] long to answer requests for
> care, or the fact that they refuse to give efficacious
> medicine. With regard to Mr. Milton Simpson to whom I
> am very familiar with as we were pod mates at the
> (CJC) jail. I have witnessed and share the same
> injustices as he. The nurse talks to him like a dog
> and refuses to give him the medication that will keep
> him from swelling and being in constant severe pain.

(ECF No. 208-1 at 4-8.)

Affiants' statements that they "have had to suffer unjustly

at the hands of an uncaring, under trained, unsupervised, and

cruel medical staff" are conclusory allegations with no specific

factual basis. (See id.) Plaintiff cannot merely substitute

affiants' conclusory allegations for his own and call them

evidence. See Lujan, 497 U.S. at 888. Moreover, the affidavits

lack sufficient information to determine whether the affiants

are qualified to opine on the training of the CCS medical staff.

Regardless, these lay opinions, without more context or evidence

of an official CCS policy, are not helpful to the trier of fact.

See Mitroff v. Xomox Corp., 797 F.2d 271, 276 (6th Cir. 1986)

(holding that "seldom will be the case when a lay opinion on an

ultimate issue will meet the test of being helpful to the trier
of fact . . . .").

Additionally, the statements regarding "the nurse [who]
brings medicine either to[o] late in the morning [or] too early
at night that refuses to answer the simplest of serious
request[s] or concerns," "[d]octors [who] either, take to[o]
long to answer requests for care, or . . . refuse to give
efficacious medicine," and "[t]he nurse [who] talks to him like
a dog and refuses to give him the medication . . . ." fail to
specify the relevant CCS staff member. (See ECF No 208-1 at 4-
8.) The Court cannot determine which CCS staff member these
allegations relate to, and accordingly, cannot consider these
allegations as evidence. Moreover, the affidavits lack
sufficient information to determine whether the affiants are
qualified to opine on the proper standards for distributing
medication and providing treatment.

This leaves the Court with affiants' statements that they
were inmates at the Shelby Justice Center, were treated by the
on-site medical staff, and were pod mates with Plaintiff. (See
id.) Without additional context, however, these statements also
are irrelevant to Plaintiff's claims.

Although these affidavits purport to corroborate
Plaintiff's claims, the affiants' opinions do not provide any
additional evidence disputing the Defendants' alleged undisputed

facts or any information that is relevant to determining any fact at issue in this case. The affiants fail to specify whether they were treated by any of the individual Defendants and fail to provide any relevant information regarding the claims against CCS. Accordingly, the Court finds that the five affidavits are inadmissible and, therefore, may not be considered by the Court.

### C. HIPAA Claims

The appropriate action for a party to take regarding an alleged Health Insurance Portability and Accountability Act (HIPAA) violation is to lodge a written complaint with the Secretary of Health and Human Services . . . ." See 45 C.F.R. § 160.306. "HIPPA [sic] regulations do not confer a private right of action on an individual." Johnson v. Kuehne & Nagel Inc., No. 11-cv-02317-STA-cgc, 2012 WL 1022939, at *5 (W.D. Tenn. Mar. 26, 2012) (Plaintiff may not attempt to enforce HIPAA privately because "Plaintiff's only redress for an alleged [HIPAA] violation is to lodge a written complaint with the Secretary of Health and Human Services"); see Wilson v. Memphis Light, Gas & Water, No. 12-2956-STA-tmp, 2013 WL 4782379, at *3 (W.D. Tenn. Sept 5, 2013) ("[P]laintiff's factual allegations that the defendants violated HIPAA . . . even taken as true, do not state a claim on which relief may be granted.").

In the instant case, Plaintiff attempts to obtain relief for an alleged violation of his privacy rights concerning his medical records. Courts in this circuit have consistently held that HIPAA claims such as this one "provide[] no factual basis which could plausibly suggest an entitlement to relief pursuant to HIPAA because that statute does not afford individuals a private right of action." Wilson, 2013 WL 4782379, at *3. Accordingly, the Court finds that Plaintiff has not asserted any claim as to a HIPAA violation upon which relief can be granted.

**D.   Remaining § 1983 Claims Against Defendants**

Following the Court's September 8, 2014 Order, the only Defendants remaining in this matter are the following: Correct Care Solutions, LLC, Naomi Swift, M.D., Diane Simpkins, RN, Diane Bishop, RN, and Elby Mattix, LPN. (ECF No. 181.) These five Defendants filed a Motion for Summary Judgment on January 15, 2015. (ECF No. 188.)

**1.   Legal Standard for § 1983 Claims**

In order to survive a motion for summary judgment on a § 1983 claim, the plaintiff must establish "two elements: 1) the deprivation of a right secured by the Constitution or the laws of the United States and 2) the deprivation was caused by a person acting under color of state law." S.L. ex rel. K.L. v. Pierce Twp. Bd. of Trs., 771 F.3d 956, 961 (6th Cir. 2014)

(quoting Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir. 1995))
(internal quotation marks omitted).

"The Eighth Amendment forbids prison officials from
unnecessarily and wantonly inflicting pain on an inmate by
acting with deliberate indifference toward the inmate's serious
medical needs." Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 895
(6th Cir. 2004) (quoting Estelle, 429 U.S. at 104) (internal
quotation mark omitted). The Fourteenth Amendment Due Process
Clause provides "similar protections to pretrial detainees."
Nouri v. Cnty. Of Oakland, No. 14-1771, -- F. App'x --, 2015 WL
3650168 (6th Cir. June 12, 2015) (citing Blackmore, 390 F.3d at
895). A prison official's deliberate indifference "violates
these rights '[w]hen the indifference is manifested by . . .
intentionally denying or delaying access to medical care . . .
.' for a serious medical need." Blackmore, 390 F.3d at 895
(quoting Estelle, 429 U.S. at 104 ("A medical decision not to
order an X-ray, or like measures, does not represent cruel and
unusual punishment. At most it is medical malpractice . . .
.")).

A constitutional claim for the denial of medical care has
both objective and subjective components. Farmer v. Brennan,
511 U.S. 825, 834 (1994). The objective component requires that
"the inmate must show that he is incarcerated under conditions
posing a substantial risk of serious harm." Id. The objective

21

component "is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm." Blackmore, 390 F.3d at 899. "The subjective component requires an inmate to show that prison officials have a sufficiently culpable state of mind in denying medical care." Blackmore, 390 F.3d at 895 (citation and internal quotation marks omitted). "Deliberate indifference 'entails something more than mere negligence,' but can be 'satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. at 895-96 (quoting Farmer, 511 U.S. at 835). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." Blackmore, 390 F.3d at 896 (quoting Horn v. Madison Cnty. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994)) (granting summary judgment for defendant because plaintiff's proof failed to satisfy the objective element, which requires proof using verifying medical evidence that his injury was sufficiently serious).[1]

A prison medical official's inadvertent failure to provide adequate medical care does not constitute "an unnecessary and

---

[1] The verifying medical evidence requirement, relying on Napier v. Madison Cnty., Ky., 238 F.3d 739 (6th Cir. 2001), only applies "where the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious." Blackmore, 390 F.3d at 898.

wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 105. "In

order to state a cognizable claim, a prisoner must allege acts

or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." <u>Id.</u> at 106.

Additionally, in a § 1983 suit "each Government official . . .

is only liable for his or her own misconduct." <u>Ashcroft</u>, 556

U.S. at 677. While "the physical injury required by § 1997e(e)

for a § 1983 claim need not be significant, it must be more than

<u>de minimis</u> for an Eighth Amendment claim to go forward."

<u>Flanory v. Bonn</u>, 604 F.3d 249, 254 (6th Cir. 2010) (finding that

plaintiff's injury satisfied this standard when plaintiff was

diagnosed with periodontal disease after a prison official

deprived him of toothpaste for 337 days).

## 2. Claims Against CCS

The remaining claims against CCS are as follows: (1) that

it had a policy of failing to train, supervise, and/or

discipline its employees, (2) that it had a policy of using less

than efficacious medications and treatments, and (3) that it had

a policy of hiring unqualified personnel to save money. (<u>See</u>

ECF No. 93 at 7.)

The Supreme Court held in <u>Monell v. Dep't of Soc. Servs. of</u>

<u>N.Y.</u>, that "a municipality cannot be held liable <u>solely</u> because

it employs a tortfeasor--or, in other words, a municipality

cannot be held liable under § 1983 on a <u>respondeat superior</u>

theory." 436 U.S. 658, 691 (1978). A municipality will only be liable under § 1983 "when execution of a government's policy or custom . . . inflicts the injury . . . ." Id. at 694; see also Connick v. Thompson, 131 S. Ct. 1350, 1358 (2011) (holding that defendant, a former New Orleans District Attorney in charge of the office's policy, was entitled to judgment as a matter of law in this § 1983 claim because plaintiff failed to prove that defendant was "on actual or constructive notice of, and therefore deliberately indifferent to, a need for more or different . . . training").

Because municipalities are not vicariously liable for their employees' actions, plaintiffs who seek to impose liability on municipalities under § 1983 must "prove that action pursuant to official municipal policy caused their injury." Id. at 1359 (internal quotation marks omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Id. "[A] municipality's failure to train its employees . . . must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (alteration in original) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of

his action." Id. at 1360 (citation and internal quotation marks omitted).

Defendant has submitted an affidavit of Audrey L. Townsel, PsyD, MHA, who opines that "the CCS appropriately trains, supervises and disciplines its employees and did so at all times relevant to the instant lawsuit." (Townsel Aff. ¶ 8, ECF No. 188-3; Undisputed Material Facts as to Correct Care Solutions, LLC ("SUF as to CCS") ¶ 1, ECF No. 188-2.) Additionally, Townsel states that "CCS has a policy of hiring and retaining medical professionals licensed by the State of Tennessee for their respective positions and did so during 2010 and 2011." (Townsel Aff. ¶ 12; SUF as to CCS ¶ 5.) Defendant also submits the affidavit of Naomi Swift, M.D., who attests that "[a]t all times relevant to the allegations in this lawsuit, CCS employed and/or administered appropriate medicines, methods and treatment, rendered within the standard of care and that care is not sacrificed for cost savings." (Swift Aff. ¶ 23, ECF No. 188-4; SUF as to CCS ¶ 13, ECF No. 188-2.)

Plaintiff, on the other hand, submits no admissible evidence supporting his allegations that CCS has policies of failing to train, supervise, or discipline its employees, providing ineffective medication, or hiring underqualified staff. In fact, Plaintiff has not specifically identified any official CCS policies in any of his summary judgment filings.

Accordingly, Plaintiff has failed to "prove that action pursuant
to official municipal policy caused [his] injury." See Connick,
131 S. Ct. at 1359 (internal quotation marks omitted). Because
the Court does not otherwise assign vicarious liability to
municipal defendants in § 1983 cases, the Court GRANTS Defendant
CCS's Motion for Summary Judgment as a matter of law.

### 3. Claim Against Bishop

The remaining claim against Defendant Bishop is that she
acted with deliberate indifference to Plaintiff's medical needs
when she failed to take corrective action after observing
Plaintiff coughing up blood. (See ECF No. 93 at 11; ECF No.
208-1 at 1-2.)

Bishop is a registered nurse who was involved with
Plaintiff's treatment in 2010. (Bishop Aff. ¶¶ 3-4, ECF No.
188-6; Undisputed Material Facts as to Michelle Bishop, RN ("SUF
as to Bishop") ¶¶ 3-4, ECF No. 188-2.) On September 17, 2010,
Bishop showed Plaintiff a waiting list that he would have to be
placed on in order to receive medical treatment. (ECF No. 208
at 15, ll. 17-20; SUF as to Bishop ¶ 14.) On September 19, 2010,
Plaintiff submitted a Health Service Request Form complaining
that he was coughing up a red substance, experiencing back,
neck, lung, chest, and head pain, and that the medical
department was refusing to treat him. (ECF No. 208 at 15, ll.

20-23; SUF as to Bishop ¶ 15.)[2]  "Health Service Requests are triaged based upon the severity of the complaints."  (Bishop Aff. ¶ 9; SUF as to Bishop ¶ 9.)  Plaintiff's Health Service Request form was triaged on September 21, 2010, but the progress note "reflects that Mr. Simpson refused treatment stating that he did not need help and that he 'did not want to see [the nurse] because she will not give [him] Lortabs.'"  (Bishop Aff. ¶¶ 16, 17; SUF as to Bishop ¶¶ 16, 17.)  Bishop did not see Plaintiff after September 21, 2010, although Plaintiff was seen by CCS medical professionals at least six times during the month of September 2010.  (Bishop Aff. ¶¶ 10, 19, 20; SUF as to Bishop ¶¶ 10, 19, 20.)  Plaintiff has not submitted evidence of any actual harm resulting from the delay in treatment, but rather asserts that there was a "serious risk of [h]arm."  (See ECF No, 208-1 at 2, ll. 1-2.)

In the instant case, Plaintiff was seen and offered treatment on September 21, 2010.  (Bishop Aff. ¶¶ 16, 17; SUF as to Bishop ¶¶ 16, 17.)  Although Plaintiff alleges that Defendants refused to see him, he offers no evidence in support of his allegation.  (See ECF No. 208 at 15-16.)  Instead, the

---

[2] The parties disagree over whether Bishop saw Plaintiff cough up blood or if she read about it in his Health Services Request Form.  Regardless, Bishop concedes that she had knowledge that Plaintiff coughed up blood at the time of treatment.  Accordingly, this disputed fact does not create "a dispute of material fact" because it does not affect the analysis of whether Bishop was deliberately indifferent to Plaintiff's medical needs.  See Anderson, 477 U.S. at 248 ("while the materiality determination rests on substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs").

record shows that it was Plaintiff who refused to be seen because he did not like the medical treatment offered. (Bishop Aff. ¶ 17; SUF as to Bishop ¶ 17.) The CCS medical staff's decision to offer Plaintiff Tylenol instead of Lortab for his pain was a matter for medical judgment. Although, in hindsight, stronger pain medication may have been helpful, Bishop's decision not to provide Lortab does not represent cruel and unusual punishment. See Estelle, 429 U.S. at 107 (finding that "the question [of] whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," which "does not represent cruel and unusual punishment"). Accordingly, Plaintiff has not satisfied his burden as to this claim, and Defendant Bishop is entitled to summary judgment as a matter of law.

### 4. Claim Against Mattix

Plaintiff's remaining claim against Defendant Mattix is that Mattix acted with deliberate indifference to Plaintiff's medical needs when she delayed treatment for Plaintiff's severe chest pain despite the availability of a medical provider in November 2010. (ECF No. 93 at 12-13.)

Plaintiff received a chest X-ray at the Regional Medical Center on November 3, 2010, and he was seen again at this facility on November 8, 2010. (Mattix Aff. ¶ 6, ECF No. 188-7;

Undisputed Material Facts as to Elby Mattix, LPN ("SUF as to
Mattix") ¶ 6, ECF No. 188-2.) On November 9, 2010, Plaintiff
came to the CCS medical clinic complaining of chest pain and
specks of blood in his clear white sputum. (Mattix Aff. ¶ 8;
ECF No. 208 at 16, ll. 8-11; SUF as to Mattix ¶ 8.) Plaintiff,
however, refused CCS's offered treatment on that day. (Mattix
Aff. ¶ 10; SUF as to Mattix ¶ 10.) Plaintiff was ultimately
treated on November 12, 2010, and the medical notes reflect that
Plaintiff had been taking Doxycycline, which cleared up his
complaints of coughing up blood. (Mattix Aff. ¶ 11; SUF as to
Mattix ¶ 11.)

Plaintiff has not submitted any evidence, aside from his
own conclusory allegations, suggesting that Mattix was
deliberately indifferent in delaying his treatment. See
Anderson, 477 U.S. at 248 (holding that "a party opposing a
properly supported motion for summary judgment may not rest upon
the mere allegations or denials of his pleading") (internal
quotation marks omitted). Instead, the evidence shows that
Mattix offered Plaintiff treatment on November 9, 2010, but due
to Plaintiff's refusal of treatment, the treatment was delayed
until November 12, 2010. (See Mattix Aff. ¶¶ 10, 11; SUF as to
Mattix ¶¶ 10, 11.) Accordingly, Plaintiff has not submitted
sufficient evidence for a reasonable jury to find that Mattix
acted with deliberate indifference in delaying his treatment,

and Defendant Mattix is entitled to summary judgment as a matter
of law.

### 5.  **Claims Against Swift**

Plaintiff's remaining claims against Defendant Swift are
(1) that Swift prescribed Tylenol 3 despite her alleged
knowledge that Defendant was allergic to the drug; and (2) that
Swift's actions were in retaliation for Plaintiff's filing of a
grievance against her.  (ECF No. 93 at 15-16.)

Swift is the Medical Director for CCS and held that
position at all times relevant to this matter.  (Swift Aff. ¶ 3,
ECF No. 188-4; Undisputed Material Facts as to Naomi Swift, M.D.
("SUF as to Swift") ¶ 3, ECF No. 188-2.)  Swift treated
Plaintiff numerous times between July 2010 and June 2011.
(Swift Aff. ¶¶ 7-8; SUF as to Swift ¶¶ 7-8.)  Although Plaintiff
contended that he had an allergy to Tylenol 3 and requested
Lortab, Swift prescribed him Tylenol 3 to treat his ongoing
complaints of pain.  (Swift Aff. ¶ 11; SUF as to Swift ¶ 11.)
Swift opined "that an allergy to Tylenol 3 would equate to an
allergy to Lortab because they share the same active ingredient,
acetaminophen." (Swift Aff. ¶ 15; SUF as to Swift ¶ 15.)
Moreover, despite Plaintiff's assertions, Swift did not
personally observe or see documented any objective signs of any
allergic reaction. (Swift Aff. ¶ 14; SUF as to Swift ¶ 14.)
Consequently, Swift believed that Plaintiff "was engaging in

drug seeking behavior by insisting on Lortab to the exclusion of any other pain medication." (Swift Aff. ¶ 17; SUF as to Swift ¶ 17.) Swift explains that "Mr. Simpson was not given Lortab as retaliation but because Lortab was contraindicated given his medical and mental health history." (Swift Aff. ¶ 19; SUF as to Swift ¶ 19.)

### a. Prescription for Tylenol 3

Prisoners are not entitled to unqualified access to the medical treatment of their choice. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Id. The Court draws a line between "the medical conditions or complaints which require medical treatment and those [medical conditions] which present what are essentially options for the inmate in terms of seeking relief from symptoms." Hendricks v. Cuyahoga Cnty. Bd. of Comm'ns, No. 1:14 CV 1890, 2015 WL 710930, at *5 (finding that conditions such as occasional indigestion, dandruff, acne, headaches, allergies, and muscle aches resulting from exertion fall into the latter category). "To establish deliberate indifference and therefore a constitutional violation, Plaintiff must allege facts to suggest that these Defendants were not only aware of the facts from which an

inference of serious harm could be drawn, but also that they
made this inference of harm and refused to act." Id. at *6.

In the instant case, Simpson informed CCS medical staff
that he needed pain medication because he "hurt all over his
body in his joints." (ECF No. 208 at 14 ll. 17-18.) Swift was
entitled to exercise medical judgment to determine the
appropriate course of treatment for Plaintiff's pain. See
Estelle, 429 U.S. at 107 (finding that "the question [of]
whether an X-ray or additional diagnostic techniques or forms of
treatment is indicated is a classic example of a matter for
medical judgment"); Hendricks, 2015 WL 710930, at *5 (finding
that conditions such as muscle aches "present what are
essentially options for the inmate in terms of seeking relief
from symptoms"). To establish that Swift acted with deliberate
indifference, Plaintiff must show that Swift both perceived that
the Tylenol was injuring Plaintiff and refused to act to remedy
Plaintiff's pain. Plaintiff has failed to prove either of these
elements. First, Swift found Plaintiff's assertion that he was
allergic to Tylenol 3 incredible based on his medical and mental
health history and the fact that he was requesting another drug
with the same active ingredient. Plaintiff has failed to point
to any objective evidence of an allergy in his medical record to
refute Swift's statement or demonstrate that she did, in fact,
perceive that the Tylenol was injuring him. Second, Plaintiff

provides no evidence that Swift refused to act to remedy
Plaintiff's pain.  Rather, Plaintiff concedes that Swift
prescribed him Tylenol 3, a pain medication, in an effort to
remedy Plaintiff's pain.  Accordingly, Plaintiff has not
satisfied the summary judgment burden of showing that Swift
acted with deliberate indifference in prescribing him Tylenol 3.

### b. Retaliation Claim

"In a retaliation claim . . . the harm suffered is the
adverse consequences which flow from the inmate's
constitutionally protected action."  Thaddeus-X v. Blatter, 175
F.3d 378, 394 (6th Cir. 1999); see Dixon v. Brown, 38 F.3d 379,
379 (8th Cir. 1994) ("Because the retaliatory filing of a
disciplinary charge strikes at the heart of an inmate's
constitutional right to seek redress of grievances, the injury
to this right inheres in the retaliatory conduct itself.").
"[A] damages remedy under § 1983 would offer redress" if a
plaintiff's injuries "were inflicted in retaliation for
constitutionally protected conduct" and "are traceable to the
unlawful conduct of the defendants . . . ."  Thaddeus-X, 175
F.3d at 394.  A retaliation claim generally consists of three
elements:

> (1) the plaintiff engaged in protected conduct; (2) an
> adverse action was taken against the plaintiff that
> would deter a person of ordinary firmness from
> continuing to engage in that conduct; and (3) there is
> a causal connection between elements one and two--that

33

is, the adverse action was motivated at least in part
by the plaintiff's protected conduct.

Id. (noting that "[t]his formulation describes retaliation
claims in general, but it will yield variations in different
contexts"). To establish that a defendant's actions were
sufficiently adverse to deter a person of ordinary firmness from
engaging in protected conduct, a plaintiff must "establish the
factual basis for his claim that the retaliatory acts amounted
to more than a de minimis injury." Bell v. Johnson, 308 F.3d
594, 606 (6th Cir. 2002). "Conclusory allegations of
retaliatory motive with no concrete and relevant particulars
fail to raise a genuine issue of fact for trial." Murray v.
Unknown Evert, 84 F. App'x 553, 556 (6th Cir. 2003) (quoting
Salstrom v. Sumner, No. 91-15689, 1992 WL 72881, at *1 (9th Cir.
Apr. 10, 1992)) (internal quotation marks omitted).

Plaintiff alleges that "once plaintiff decided to file
grievances against Defendant Swift, she used her position as
Senior Physician to retaliate against plaintiff by refusing
medical treatment when plaintiff would come before her for other
medical problems." (ECF No. 208 at 13, ll. 9-12.)
Specifically, Plaintiff claims that Swift retaliated against him
and violated his Eighth Amendment rights by telling him he
needed to purchase foot cream from the prison commissary despite
the alleged fact that she gave the cream to other prisoners.

(ECF No. 208 at 13, ll. 11-19.)  Plaintiff further claims that
he saw a red note in his medical file alerting other medical
staff "not to allow Plaintiff to see any other doctor accept
[sic] Doctor Swift." (Id. at 14, ll. 2-5.)

It is undisputed that Plaintiff had engaged in a protected
activity when he filed grievances against Swift.  Plaintiff has
not, however, submitted sufficient evidence to establish the
latter two elements of a retaliation claim.  Viewing the facts
in the light most favorable to Plaintiff, although CCS insisted
that Plaintiff be seen by Dr. Swift, the Medical Director, it
did not deny him access to medical treatment altogether.  The
law is well-established that prisoners are not entitled to
unfettered access to the medical treatment or physician of their
choice.  See, e.g., Hudson, 503 U.S. at 9; Estelle, 429 U.S. at
105-06.  Plaintiff has further failed to show that he suffered
more than de minimis harm as a result of this red note in his
medical file.  Accordingly, the Court finds that insisting that
Plaintiff be treated by Dr. Swift is not an adverse action that
would deter a person of ordinary firmness from filing a
grievance.  Similarly, Plaintiff has not shown that Swift's
instruction to buy fungal cream from the commissary was a
sufficiently adverse action.  This treatment was readily
available to Plaintiff at the commissary and Swift did not
interfere with Plaintiff's ability to purchase the fungal cream.

Additionally, Plaintiff has not established that Swift's instruction to buy fungal cream from the commissary resulted in more than de minimis injury. See Sarah v. Thompson, 109 F. App'x 770, 772 (6th Cir. 2004) (finding that plaintiff "made no attempt to meet this burden except in conclusory fashion").

Moreover, Plaintiff has not submitted any evidence of a causal connection between the allegedly adverse actions and his filing of grievances. Rather, Plaintiff merely makes conclusory allegations that Swift's actions were in retaliation for his filing of grievances. Such conclusory allegations are insufficient to prevail on summary judgment. See Murray, 84 F. App'x at 556. Plaintiff therefore fails to establish a causal connection necessary to prevail on his retaliation claim. Accordingly, Swift is entitled to judgment as a matter of law.

### 6. Claim Against Simpkins

Plaintiff's remaining claim against Defendant Simpkins is that Simpkins' refusal to refer him to a doctor was in retaliation for a previous confrontation and Plaintiff's filing of a grievance against her. (ECF No. 93 at 14-15.)

Plaintiff alleges that he saw Simpkins on September 21, 2010. (ECF No. 1-1 at PageID 48.) On that occasion, Plaintiff claims that he was in such "extreme pain" that he could not wait in line for medical attention, so he went to wait in his cell. (ECF No. 208 at 17.) Plaintiff alleges that Simpkins did not

recall Plaintiff from his cell and made a notation of Plaintiff's refusal to see the medical staff. (Id.)

As discussed above, see supra Part III.D.5.b, in order to rise to the level of deliberate indifference, a defendant must have taken retaliatory action "that would deter a person of ordinary firmness from continuing to engage in that conduct." Thaddeus-X, 175 F.3d at 394.

In the instant case, Plaintiff alleges that "Simpkins[']  delay in accessing plaintiff was for the sole purpose of causing plaintiff to suffer because plaintiff had a disagreement with Simpkins." (ECF No. 208-1 at 3, ll. 4-10.) Aside from this conclusory allegation, Plaintiff offers no proof to suggest that Simpkins was, in fact, retaliating against him. Plaintiff has submitted no evidence that his injury on September 21, 2010, was serious, that he suffered any harm from this alleged delay in his treatment, or that Simpkins had a culpable mind in not seeking him out after he refused to wait in line. Additionally, Simpkins has stated that "[a] progress note dated September 21, 2010[,] reflects that Mr. Simpson refused treatment stating that he did not need help and that he 'did not want to see [Simpkins] because she will not give me Lortabs.'" (Simpkins Aff. ¶ 16, ECF No. 188-5.) Although Plaintiff did not receive treatment on September 21, 2010, he was referred to a psychiatrist on September 22, 2010. (Id. ¶ 17.) Moreover, Plaintiff was seen

by CCS medical and mental health professionals five additional times during the month of September 2010.  (Id. ¶ 18.)

Given the fact that Plaintiff received nearly continuous treatment throughout September and was not harmed by the lack of treatment on September 21, 2010, Simpkins' decision not to seek out Plaintiff in his cell on September 21, 2010, could not be considered so adverse as to deter a person of ordinary firmness from engaging in a confrontation or filing a grievance.  See Sarah, 109 F. App'x at 772 (6th Cir. 2004) (finding that plaintiff failed to show defendant's actions were sufficiently severe to deter a person of ordinary firmness from exercising his rights when plaintiff made no showing that defendant's refusal to provide ibuprofen "amounted to more than de minimis injury").  Moreover, Plaintiff has not provided any evidence that Simpkins' actions were causally connected to their earlier confrontation or Plaintiff's filing of a grievance.  Even viewing the evidence in the light most favorable to Plaintiff, there is not enough to find that Simpkins acted in retaliation or that her actions reached the level of deliberate indifference.  Accordingly, the Court finds that Simpkins is entitled to summary judgment as a matter of law.

IV.  **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with

respect to any of his remaining claims.  Accordingly,

Defendants' Motion for Summary Judgment is GRANTED as a matter

of law.

      **IT IS SO ORDERED,** this 24th day of September, 2015.

                            /s/ Jon P. McCalla

                            JON P. McCALLA
                            UNITED STATES DISTRICT JUDGE